# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

ANDREW M. WICHELNS,

                    Plaintiff,

     v.                                5:12-CV-1595
                                      (NAM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

---

HOWARD D. OLINSKY, for Plaintiff
JEREMY A. LINDEN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Norman A. Mordue, Senior United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

On September 25, 2009, plaintiff protectively filed[1] his application for supplemental security income, claiming disability beginning December 31, 2002. Plaintiff's application was denied initially on December 14, 2009 (Tr. 66-69), and he requested a hearing before an ALJ (Administrative Transcript ("Tr.") 74). The

---

[1] When used in conjunction with an application for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. See 20 C.F.R. § 404.630. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

hearing, at which plaintiff testified, was conducted on November 23, 2010. (Tr. 37-64).

In a decision dated January 21, 2011, the ALJ found that plaintiff was not disabled. (Tr. 20-32). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 27, 2012. (Tr. 1-3).

## II.   FACTS

Plaintiff's counsel has included a detailed summary of the medical and vocational facts in his brief. (Pl. Br. at 2-9). Defendant's counsel has incorporated the ALJ's summary into his brief. (Def. Br. at 2). This court will also incorporate the facts as stated by the ALJ and both counsel, with any exceptions as noted in the discussion below.

## III.   ALJ's DECISION

The ALJ found that plaintiff had not engaged in substantial gainful activity since September 25, 2009, the application date. (Tr. 25). The ALJ then found that plaintiff had a "severe combination of impairments:" depression, anxiety, and a history of alcohol abuse, in remission. (*Id.*). The ALJ concluded, however, that plaintiff's impairments did not meet the severity of the listed impairments.[2] (Tr. 25-27). The ALJ explained that his analysis of plaintiff's limitations in the context of the listed

---

[2] The ALJ explicitly considered sections 12.04 (affective disorders) and 12.06 (anxiety related disorders). 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that plaintiff did not have at least two "marked" limitations in activities of daily living, social functioning, concentration, persistence, and pace. (Tr. 26). Nor did plaintiff have one "marked" limitation and "repeated" episodes of decompensation "each of extended duration." (*Id.*). The ALJ further noted that there was no evidence to show that plaintiff has any episodes of decompensation or that he would decompensate if he experienced minimal increases in mental demands or a change in environment. (Tr. 27).

impairments did not constitute an RFC finding, and that his RFC would contain a more detailed assessment of plaintiff's limitations. (Tr. 27).

The ALJ then proceeded to Step 4 and found that plaintiff had the physical RFC to perform work at all exertional levels, but with additional non-exertional limitations. More specifically, the ALJ determined that plaintiff retained the capacity for simple and semi-skilled work, finding that he had the ability to: understand, remember and carry out simple and more complex instructions; ask questions or request assistance; make independent, work-related decisions; perform simple and multiple step tasks at an acceptable pace and quality under normal supervision; and maintain attention over a normal work day and workweek. (Tr. 27). The ALJ further determined that plaintiff was able to maintain regular attendance; be punctual within customary tolerances and sustain a routine schedule; adapt to an ordinary, routine work setting, adapt to routine changes, and set reasonable goals. (*Id.*). With respect to plaintiff's interpersonal interactions, the ALJ found that plaintiff could interact appropriately with the general public, co-workers and supervisors; accept instructions and respond appropriately to criticism, and behave appropriately. (*Id.*).

The ALJ analyzed plaintiff's symptoms and determined that despite plaintiffs' claimed difficulty paying attention, concentrating, and handling stress as a result of his anxiety and depression, he reported performing a variety of daily activities without difficulty. (Tr. 28). Consequently, the ALJ found that while plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the reported intensity, persistence and limiting effects were not credible to the extent they were inconsistent with the ALJ's RFC determination. (Tr. 29). The ALJ further observed that plaintiff's

credibility was weakened by the inconsistencies between his allegations and the medical evidence, and that his "medications have been relatively effective in controlling [his] symptoms." (Tr. 30, 31). The ALJ further concluded that the objective medical evidence did not corroborate plaintiff's allegations of disabling symptoms and limitations, noting that the treatment notes did not support plaintiff's allegations, and that the consultative opinions supported the ALJ's RFC determination. (Tr. 29-31).

The ALJ cited reports authored by Robert Rix, LCSW; Dennis Noia, M.D.; and R. Nobel, M.D. (Tr. 29-30). The ALJ assigned great weight to Dr. Noia, a consultative examiner, who opined that despite a history of difficulty dealing with stress, plaintiff could understand and follow simple instructions and directions; perform simple and complex tasks with supervision and independently; maintain attention and concentration; regularly attend to a routine and maintain a schedule; learn new tasks; and interact moderately well with others. (Tr. 30). Likewise, the ALJ assigned great weight to Dr. Nobel, a state agency medical consultant, who opined that plaintiff was capable of simple and semi-skilled work. (Tr. 30).

The ALJ assigned no weight to Mr. Rix, a social worker, who provided a very restrictive assessment of plaintiff's ability to function, finding that plaintiff was unable to focus or concentrate, and had no useful ability to: accept instructions and respond appropriately to criticism; respond appropriately to changes in a routine or work setting; or deal with work stress. (Tr. 30). The ALJ observed that as a social worker, Mr. Rix is not an acceptable medical source; but he would be considered an "other source" under the applicable regulations. The ALJ further explained that Mr.

Rix appeared to have "crossed over from the role of an objective observer . . . to the role of an advocate for the financial interests" of plaintiff. (Tr. 30-31). The ALJ noted that no specific objective findings supported Mr. Rix's opinion,[3] and it departed substantially from the rest of the evidence of record. (Tr. 31).

The ALJ next analyzed whether plaintiff would be able to perform his past relevant work as a boat builder. Finding that plaintiff's past work met the requirements for "substantial gainful activity" and had current relevance considering duration and recency, the ALJ consulted the Dictionary of Occupational Titles and found that plaintiff was able to perform his past relevant work.[4] (Tr. 31).

## IV. <u>APPLICABLE LAW</u>

### A. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

physical or mental impairment or impairments [must be] of such severity

---

[3] In this regard, the ALJ clarified that although he left the record open following the hearing so that counsel could submit records from the Wellness Center, where plaintiff received treatment from Mr. Rix, no underlying treatment notes were submitted, nor did plaintiff request additional time to do so. (Tr. 31 n.1; *see also* Tr. 181, 182).

[4] The ALJ noted that plaintiff did not contend that he was not capable of the physical or mental demands of his past work, "just that he lost his job as a boat builder for being 'unaccountable,' a factor that does not seem to be present now that he has been able to maintain sobriety." (Tr. 32).

that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and

the Commissioner "need not provide additional evidence of the claimant's residual functional capacity"); *Selian*, 708 F.3d at 418 & n.2.

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d at 151; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

In order to determine whether an ALJ's findings are supported by substantial evidence, the reviewing court must consider the whole record, examining the evidence from both sides, "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403-404 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citing *Williams*, *supra*).

## V. <u>ISSUES IN CONTENTION</u>

The plaintiff makes the following claims:

(1)    The ALJ's RFC determination is the product of legal error and unsupported by substantial evidence.[5]  (Pl. Br. at 10-16) (Dkt. No. 13).

(2)    The ALJ failed to properly assess plaintiff's credibility.  (Pl. Br. at 16-18).

(3)    The ALJ's Step 4 determination is unsupported by substantial evidence.  (Pl. Br. at 18-19).

Defendant argues that the Commissioner's decision is supported by substantial evidence and must be affirmed.  (Dkt. No. 14).  The court concludes, for the reasons set forth below, that substantial evidence supports the ALJ's RFC determination, the ALJ properly evaluated plaintiff's credibility, and substantial evidence supports the ALJ's determination that plaintiff could return to his past relevant work as a boat builder.  Accordingly, it is recommended that the decision of the Commissioner be affirmed and plaintiff's complaint dismissed.

## VI.   <u>RFC</u>

Plaintiff contends that the ALJ applied an improper legal standard when evaluating the opinion of social worker Rix, and that the ALJ erred by failing to reconcile his RFC determination with the opinion of consultative examiner Dr. Noia.  (Pl. Br. at 10-16).  The court finds however, that the ALJ did not commit legal error and that his RFC determination is supported by substantial evidence.

### A.   **Legal Standard**

---

[5]  Plaintiff contends that the ALJ applied an improper legal standard when evaluating the opinion of social worker Rix, and that the ALJ erred in failing to reconcile his RFC determination with the opinion of consultative examiner Noia.

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

Although the RFC determination is reserved for the Commissioner, the RFC assessment is still a medical determination that must be based on medical evidence of record, and the ALJ may not substitute his own judgment for competent medical opinion. *Walker v. Astrue*, No. 08-CV-828, 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)) (*Report-Recommendation*), *adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010); *Lewis v. Comm'r of Soc. Sec.*, No. 6:00-CV-1225, at *3 (N.D.N.Y. Aug. 2, 2005)). "It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte*

*v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (genuine conflicts in the medical evidence are for the Commissioner to resolve).

The ALJ may rely upon plaintiff's own physicians and other medical sources and also may rely on a "medical advisor" who is a non-examining state agency "medical consultant" or an examining consultative physician to whom the plaintiff was sent at agency expense. *See Walker v. Astrue*, 2010 WL 2629832 at *6-7. In addition to "acceptable medical sources," the ALJ may consider "evidence from 'other sources,' as defined in 20 C.F.R. 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." Social Security Ruling 06-03p, 2006 WL 2329939, at *2 (2006). Included in this category of "other sources" are licensed clinical social workers. *Id.* In weighing the opinions of "other sources," the ALJ may use the same factors for the evaluation of the opinions from "acceptable medical sources" enumerated in 20 C.F.R. § 404.1527(d) and 416.927(d). *Id.* at 4-5; *see also Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010).

**B.    Analysis**

The ALJ found, "after careful consideration of the entire record," that the plaintiff

> . . . has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he retains the capacity for simple and semi-skilled work. Specifically, he has the ability to understand, remember and carry out simple and more complex instructions, can ask questions or request assistance if needed, and is able to make independent, work-related decisions. He can perform simple and multiple step tasks at an acceptable pace and quality under normal supervision. He can maintain

attention over a normal work day and workweek. He can maintain regular attendance, be punctual within customary tolerances and sustain a routine schedule. He can interact appropriately with the general public, co-workers and superivsor[s], has the ability to accept instructions and respond appropriately to constructive criticism from supervisor[s] and has the ability to behave appropriately and maintain dress and hygiene suitable to the workplace. He can adapt to an ordinary, routine work setting, adapt to routine changes, set reasonable goals, avoid hazards and travel to and from work independently. He can set reasonable goals and initiate action toward them.

(Tr. 27). In addition to considering plaintiff's reported symptoms, when making his RFC determination, the ALJ considered the medical evidence of record including medical records beginning in 2004, a medical source statement from social worker Rix, the results of a consultative exam with Dr. Noia, and the opinion of a non-examining state agency medical consultant, Dr. Nobel. (Tr. 27-31).

In his Medical Source Statement, completed on November 19, 2010, Rix indicated that he began treating plaintiff on October 14, 2010.[6] (Tr. 296). Rix's assessment is very restrictive and in addressing plaintiff's ability to perform unskilled work, finds that plaintiff has no useful ability to: accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; or deal with normal work stress. (Tr. 297). Rix further opined that plaintiff is unable to meet competitive standards with respect to regular

---

[6] In a summary submitted after the hearing, Rix indicated that he had been treating plaintiff since September 2009. (Tr. 299). According to Dr. Noia's report, plaintiff reported treating at the Wellness Center (where plaintiff saw social worker Rix) since October 2009. (Tr. 228). At the hearing, plaintiff stated that he began treating with a psychiatrist at the Wellness Center in October 2008, but had been seeing "the therapist only since February." (Tr. 47). The hearing was held on November 23, 2010; accordingly, plaintiff appears to have testified that he had been seeing social worker Rix since February 2010. Because there are no treatment notes from Rix, it is unclear when plaintiff actually began treating with Rix. Plaintiff's counsel uses the October 2010 date in his brief. *See, e.g.,* Pl. Br. at 7, 14.

attendance and punctuality or completing a normal workday or workweek without interruptions from his symptoms. (*Id.*). Additionally, Rix determined that plaintiff was seriously limited, but not precluded from: remembering work-like procedures, understanding and remembering very short and simple instructions; sustaining an ordinary routine; asking simple questions or requesting assistance; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (*Id.*). In his supplementary summary, submitted after the hearing in lieu of treatment notes, he opined that "forcing [plaintiff] into the workforce would cause a great deal of potentially dangerous pressure on his mental condition." (Tr. 299).

Plaintiff contends that the ALJ's decision to assign no weight to social worker Rix's opinion was error. However, the ALJ discussed social worker Rix's opinions and provided specific reasons for not assigning it any weight. Based upon the applicable regulations, social worker Rix is not a treating source subject to the treating physician rule. Social workers are considered an "other source" whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight. *See* 20 C.F.R. § 416.913(d)(1). Moreover, the opinions expressed in Rix's assessment are not supported by progress notes or evidence of objective medical testing.[7]

---

[7] The court notes that the ALJ left the record open for plaintiff to submit any progress notes. In response plaintiff only submitted another summary from Rix. Counsel did not seek additional time to follow up with the Wellness Center, nor did he request that the ALJ issue a subpoena. Courts in this circuit have held that an ALJ satisfies his duty to develop the record by leaving the record open for an ample amount of time for plaintiff to submit treatment records. *See, e.g., Jordan v. Commissioner of Social Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005); *Martinez-Paulino v. Astrue*, No. 11 Civ. 5485, 2012 WL 3564140, at *14 (S.D.N.Y. Aug. 20, 2012); *Rivera v. Commissioner of Social Sec.*, 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010).

The ALJ also observed that social worker Rix's restrictive opinion is inconsistent with the other evidence in the record.[8] The record contains treatment notes beginning in 2004. At that time, plaintiff's anxiety and depression were noted, "but presently stable." (Tr. 194). In September 2004, plaintiff was hospitalized as a result of an alcoholic withdrawal seizure, and although his anxiety and depression were found to complicate his alcohol problem, it was noted that plaintiff was alert and oriented, in no acute distress, and looked very well. (Tr. 191-92). In July 2005, plaintiff stopped taking his anxiety medications, with the goal to try to be medication free. (Tr. 287).[9] In November 2005, plaintiff's assessment was social anxiety disorder, but the doctor stated that there was no evidence of major depressive disorder or psychosis at that time. (Tr. 279). In March 2006, despite his anxiety disorder, and fluctuating depression and anxiety, plaintiff was found to have a GAF score of approximately 65.[10] (Tr. 272).

---

[8] Plaintiff asserts that social worker Rix's opinions are supported by the objective medical evidence and cites to record pages relating to plaintiff's anxiety, depression, insomnia, helplessness, anhedonia, trembling, and hyperventilation. (Pl. Br. at 14). However, these observations do not support the extreme limitations found by Rix, instead, they simply note that plaintiff has, at times, experienced these symptoms. Indeed, many of these records also show that despite these symptoms, plaintiff was attending AA meetings, carrying on relationships, discussing looking for jobs, and reporting that his symptoms were well controlled with medications.

[9] In late 2005, and early 2006, plaintiff expressed anxiety regarding an upcoming move and problems with his girlfriend (*See* Tr. 277, 276), and in January 2006, he and his doctor decided on a retrial of Buspar. (Tr. 274).

[10] The GAF is a 100 point scale, and 41-50 indicates "serious symptoms," 51-60 indicates "moderate symptoms," 61-70 indicates individuals that have mild symptoms or some difficulty in social, occupational, or school settings but generally function well, and the 71-80 range is for patients responding appropriately to stress. AMERICAN PSYCHIATRIC ASSN., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th Ed. Text Revision 2000) (DSM-IV-TR).

13

In May 2006, plaintiff was admitted to Oswego Hospital in an intoxicated state due to drinking following a relationship breakup. (Tr. 294). The discharge summary observed that plaintiff made it "very clear he has no suicidal or homicidal intention" and there was "certainly no evidence of psychosis" and that though he has a past psychiatric history, "his depression also never has been really that serious" and "mostly the problem has been the alcohol abuse." (Tr. 294). He was found to have a GAF score of "65 or so." (Tr. 295). Plaintiff was again hospitalized in July 2006, "quite intoxicated" with "overwhelming anxiety and panicky feelings." (Tr. 292). Plaintiff explained that he was anxious and tense as a result of problems that were troubling him–he received a DWI the previous Thursday, his car was impounded, and he was having problems with his landlord. (Tr. 292). Plaintiff consistently denied feeling depressed or having any suicide/homicide ideation. (Tr. 292). At the time of discharge, plaintiff did "not particularly look depressed, anxious anymore," he was able to carry on a conversation in normal fashion, he did not appear to be in any distress, no psychosis, and his affect was appropriate. (Tr. 293). At this time, he was again found to have a GAF score of "about 65." (Tr. 293).

In September 2006, plaintiff noted that his depression and anxiety are under control with his medications. (Tr. 267). Plaintiff was again hospitalized in October 2006. (Tr. 265-66, 290-91). Plaintiff reported extreme anxiety and extreme depression, and further reported that he had "been doing okay as long as he was taking medication," but stopped taking it,[11] and began feeling depressed and anxious. (Tr.

---

[11] It appears that plaintiff stopped taking his medication because his medicaid coverage ended when he began working and he could no longer afford the medication. (*See* Tr. 290).

290). Plaintiff also reported that he lost his job at a construction site a week earlier,[12] had been drinking on and off for the past week, and expressed concern about how he would be able to pay his rent.[13] (Tr. 265). At the time of discharge, plaintiff's mental status had improved, and he was no longer "complaining of depression and anxiety." (Tr. 291). Plaintiff's GAF score remained a 65. (Tr. 291).

Plaintiff later expressed his belief that he did not think he should have been hospitalized for as long as he was, but "there was some problem with Child Protective Services involved in the home where he was going," so he was not allowed to go home until that was cleared up. (Tr. 264). At this time he also stated that he was "feeling better since discharge and that his depression and anxiety [were] controlled." (Tr. 264). In November 2006, plaintiff reported that his anxiety was a three on a scale of 10, and that he was mostly concerned about being incarcerated. (Tr. 263). In December 2006, plaintiff was alert and oriented, denied suicide/homicide ideations, reported that his depression and anxiety were stable on the medications, denied any psychotic, delusional, or paranoid episodes. (Tr. 262).

In October 2008, plaintiff was admitted to SUNY Upstate Medical Service for alcohol intoxication and subsequent withdrawal symptoms and presented with signs and symptoms consistent with depression and anxiety. (Tr. 211, 212). His psychiatrist had discontinued his anxiety medication three weeks earlier "because patient felt like his anxiety symptoms were resolving." (Tr. 211). Following this

---

[12] The Court notes that plaintiff held this job for two to three weeks, and left it because he lost his drivers license. (Tr. 265, 44).

[13] At a post-discharge, follow-up appointment, plaintiff further clarified that he was "admitted due to his anxiety after being arrested for his third DWI in six months." (Tr. 264).

discontinuation, plaintiff's anxiety worsened, he began drinking, and as a result he lost his halfway house/supportive housing environment, and was in violation of the conditions of his probation. (Tr. 211-12). At the time of admission, plaintiff's GAF score was 40; he was alert, oriented, calm and cooperative; his mood was reported as depressed, affect was blunted but his overall mood was congruent; and attention, memory and concentration were intact, insight and judgment were fair. (Tr. 211, 212-13). At the time of discharge, plaintiff's GAF score had improved to a 55, he was cooperative, at times anxious appearing, but overall much improved. (Tr. 211, 213).

Likewise, the opinions of the state agency medical consultants are inconsistent with social worker Rix's assessment. Dr. Noia examined plaintiff on November 20, 2009. (Tr. 228-232). Dr. Noia observed that plaintiff's "manner of relating, social skills, and overall presentation was adequate" he was appropriately dressed, hygiene and grooming were good; "thought process were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking . . . [and] his attention and concentration was intact." (Tr. 230). Plaintiff reported to Dr. Noia that he is able to take care of himself, and that he gets along well with friends and family. (Tr. 231). Dr. Noia then opined that:

> Vocationally, the claimant appears to be capable of understanding and following simple instructions and directions. He appears to be capable of performing simple and some complex tasks with supervision and independently. He appears to be capable of maintaining attention and concentration for tasks. He can regularly attend to a routine and maintain a schedule. He appears to be capable of learning new tasks. He appears to be capable of making appropriate decisions. He appears to be able to relate to and interact moderately well with others. He has a history of difficulty dealing with stress.

(Tr. 231).

16

Dr. Nobel, a state agency medical consultant provided an assessment dated December 10, 2009. (Tr. 233-250). Dr. Nobel completed a checklist assessing plaintiff's abilities in a variety of categories. (Tr. 247-48). He did not find that plaintiff's abilities were markedly limited in any of the categories. He opined that plaintiff was moderately limited in his: ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; ability to respond appropriately to changes in the work setting; and in his ability to travel in unfamiliar places or use public transportation. (Tr. 247-48). Plaintiff was found not to be significantly limited in the remaining categories. Dr. Nobel found that Dr. Noia's opinions were consistent with the medical evidence in the file, and adopted them. (Tr. 249). Consequently, Dr. Nobel opined that plaintiff retained the capacity for simple and semi-skilled work. (*Id.*). It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of Social Security disability.[14]

Social worker Rix's assessment is also inconsistent with plaintiff's reported daily activities. Plaintiff testified that he has his own apartment and is responsible for

---

[14] *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e)(2), 416.912(b)(6), 416.913(c), and 416.927(e)(2); *see also Leach ex. Rel. Murray v. Barnhart*, No. 02 Civ 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

maintaining it, performing household chores, and preparing his own meals, and that "is not an issue really." (Tr. 53). On his function report, he reported that he had no problems with personal care, and does not need any special help or reminders to take care of his personal needs and grooming. (Tr. 135-36). Plaintiff goes outside daily, goes out alone, can do any and all household chores and yardwork, shops in stores weekly or bi-weekly for food, clothing, and personal needs, is able to pay bills, and use a checkbook. (Tr. 137-38).

Plaintiff further testified that he is enrolled in a mechanical technology program at OCC, that he attends four days a week–four hours on Mondays and Wednesdays and 2 hours Tuesdays and Thursdays. (Tr. 42-43, 60). Plaintiff further testified that he takes public transportation to OCC. (Tr. 55). Additionally, although plaintiff stated that he has not made friends, he has made some acquaintances at school and talks to people during AA meetings, which he attends 3-4 times per week.[15] (Tr. 52, 54). He also stated that he spends time with others–talking on the phone with friends and family and normal visits, and does not have any problems getting along with family, friends, neighbors, or others. (Tr. 139). Plaintiff stated that his hobbies and interests include "reading, T.V., walking/parks, sports/exercises." (Tr. 138).

---

[15] The Court also notes that the progress notes included in the record show that throughout the years, plaintiff has had personal relationships. *See, e.g.,* Tr. 278 (noting that in November 2005, plaintiff was planning to move to Watertown to finish his treatment and be closer to his father and his girlfriend); Tr. 276 (noting that plaintiff expressed concerns that his girlfriend wants him to be functioning as a capable working adult before she makes any commitments); Tr. 259 (reporting that he and his girlfriend are getting along well, but he would like to be providing some type of financial support to the household).

Additionally, plaintiff has attended AA meetings over the years. *See* Tr. 280 (noting that in October 2005, plaintiff was not having anxiety difficulties in AA meetings or other social situations); Tr. 271 (noting that in July 2006, plaintiff was going to AA four to five times a week at night).

Although social worker Rix opined that plaintiff has no useful ability to accept instructions and respond appropriately to criticism from supervisors, plaintiff reported an ability to follow written and spoken instructions, that he has never lost a job because of problems getting along with people. Plaintiff reported that although police and landlords make him anxious, he does not have problems getting along with bosses, teachers, police, landlords, or other people in authority, and is "almost always amiable." (Tr. 140, 141).

The ALJ was free to conclude that the opinion of a licensed social worker was not entitled to any weight, and the ALJ sufficiently explained that decision. It appears that plaintiff's symptoms are largely controlled by medication, and in any event, caused by major events, not by the type of daily activities and stress that would occur with employment. Based upon this court's review of the medical record, the court finds that the ALJ engaged in a thorough and meaningful analysis of Rix's opinion and further, that substantial evidence supports the ALJ's decision to assign no weight to social worker Rix's conclusions. Consequently, the court finds no basis to remand on this issue.

Finally, plaintiff argues that the ALJ failed to reconcile Dr. Noia's opinion that plaintiff had a history of difficulty dealing with stress, and that plaintiff was limited to understanding and following simple instructions and directions. Although Dr. Noia did note that plaintiff "has a history of difficulty dealing with stress," he concluded that plaintiff could understand and follow simple instructions and directions, that he could perform simple and some complex tasks with supervision and independently, that plaintiff could maintain attention and concentration for tasks, learn new tasks, and

regularly attend to a routine and maintain a schedule. Dr. Noia further concluded that plaintiff could make appropriate decisions and could relate to and interact with others moderately well. (Tr. 231). Dr. Noia's overall opinion supports the ALJ's assessment that plaintiff can perform the basic mental demands of simple and semi-skilled work as described in the ALJ's RFC, notwithstanding a history of difficulty managing stress.

Dr. Noia's overall opinion also supports the ALJ's determination that plaintiff is capable of "understand[ing], remember[ing] and carry[ing] out simple and more complex instructions."[16] (Tr. 27). There is nothing in the record to suggest that the limitations found by Dr. Noia would preclude plaintiff from performing simple or semi-skilled work. Finally, as discussed above, the court notes that at the time of the hearing, plaintiff had already been undertaking tasks that generally met the description of his RFC, including maintaining an apartment, taking care of himself, and attending classes at OCC.

## VII.  CREDIBILITY

Plaintiff next argues that the ALJ failed to properly assess plaintiff's credibility. (Pl. Br. at 16-18). The ALJ, applying the appropriate two-step credibility standard, concluded that plaintiff's impairments could reasonably be expected to cause the symptoms he alleged; but, the ALJ reasonably found that plaintiff's statements concerning the intensity, persistence, and limiting effect of these symptoms were not credible to the extent they were inconsistent with his RFC determination. (Tr. 29).

---

[16]  This determination is further supported by plaintiff's statement that he can follow spoken and written instructions. (Tr. 140).

## A.    Legal Standard

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and his own activities during the relevant period.  *Howe-Andres v. Astrue*, No. CV-05-4539, 2007 WL 1839891, at *10 (E.D.N.Y. June 27, 2007).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).  First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.  *Id.* § 404.1529(c).  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints

by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

## B.    Analysis

The ALJ acknowledged that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 29). In accordance with the regulations, however, the ALJ also found that plaintiff reported that he could perform a variety of daily activities. The ALJ discussed plaintiff's testimony and concluded that plaintiff

> attends to all his own personal care needs, cooks, does house and yard work, walks, uses public transportation, shops, pays bills, counts change, handles a savings account, uses a checkbook, plays sports, exercises, reads, watches television, spends time with friends and family, and goes to the library. The claimant is also taking four college classes three to four days per week in a rigorous, mechanical technology program. He commutes from the city to classes in the suburbs by public transportation. He also attends Alcoholics Anonymous meetings three to four times per week.

(Tr. 28-29) (internal citations omitted). The evidence also showed that his anxiety and depression were well controlled when plaintiff took his medication.[17]

---

[17]  The court observes that although plaintiff alleges that he still suffers symptoms, including panic attacks, he testified that he was having a panic attack during the hearing, but stated that it was "manageable" and he was able to complete his testimony without incident. (Tr.

Moreover, the court notes that the record shows a number of inconsistencies in plaintiff's statements. For example, although plaintiff asserts an inability to work since 2002, at various points over the years, he has expressed a desire to work. (*See* Tr. 191 (noting on 9/13/04 that plaintiff "plans to go back to work doing carpentry work shortly"); 280 (noting that on 10/21/05, plaintiff was looking forward to some part time work and some part time school); Tr. 258 (discussing, on 3/27/07, plaintiff's court date and explaining that plaintiff hoped things would be resolved "so that he can begin to aggressively look for employment")).[18] At one visit to the emergency department, during check-in, plaintiff reported he was there for persistent abdominal pain, but during the interview denied abdominal pain and stated he was there because of injuries to his feet. (Tr. 205). He returned to the emergency department the following day complaining of abdominal pain, but after "repeated questioning" plaintiff "states that he just has nowhere to go tonight and needs a bed and some food." (Tr. 209). This is a strong indication that plaintiff's allegations are not credible. *See* SSR 96-7p, 1996 WL 374186, at *5 (1996) (noting that a strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record).[19]

_____

57).

[18] On other occasions, plaintiff requested letters from doctors stating that he was unable to work. (*See* Tr. 269 (requesting letter on 7/21/06, stating he is unable to work); Tr. 259 (reporting that on 1/31/07, plaintiff "stated that he spoke with Farnham who will be providing documentation that he cannot work due to his present circumstances and this documentation will be provided to DSS")).

[19] The medical records further indicate a desire on the part of plaintiff to "look for outs," "get around the system" and "rationalize his behaviors." Tr. 277 (explaining that when plaintiff could not get section 8 for his apartment due to bad credit, he "got to thinking hard about how he

These factors, together with the medical evidence, including the assessments from Dr. Noia and Dr. Nobel, supported the ALJ's finding that plaintiff's stated symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC. The court finds that the ALJ correctly applied the proper legal standards in assessing plaintiff's credibility and adequately specified the reasons for discrediting plaintiff's statements. His credibility determination is supported by substantial evidence.

## VIII. PAST RELEVANT WORK

Finally, plaintiff contends that the ALJ's determination that plaintiff could return to his past relevant work is not supported by substantial evidence and that the ALJ erred because he did not consult a vocational expert. (Pl. Br. at 18). The court concludes that the ALJ properly applied the law at step four of the sequential analysis and that his conclusion is supported by substantial evidence.

### A. Legal Standard

At step four of the analysis, the ALJ must address a claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that a claimant has performed in the past 15 years and that constituted substantial gainful activity. 20 C.F.R. § 404.1565(a), (b). If the claimant can return to his past relevant work, the Commissioner will find that he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). Where substantial evidence supports the ALJ's conclusions as to whether plaintiff's

---

could get around the system"); *see also* Tr. 269 (noting that plaintiff "requested a letter to the Cayuga County Social Services Department saying that he is unable to work" and the doctor "cautioned him on the use of this work release action and informed him that [it] would be good only on a limited time basis"); Tr. 214 ("The patient was quite guarded and overall manipulative but polite.")).

RFC allows plaintiff to perform his past relevant work, it is unnecessary to remand the case for further development of the record. *See Stenoski v. Comm'r of Social Security*, 7:07-CV-552, 2010 WL 985367, at *6 (N.D.N.Y. Mar. 16, 2010). Plaintiff "has the burden to show an inability to return to h[is] previous specific job *and* an inability to perform h[is] past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citation and emphasis omitted). This determination requires consideration of: 1) an individual's statements as to which past work requirements can no longer be met and the reason(s) for his inability to meet those requirements; 2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and 3) in some cases, supplementary or corroborative information from other sources such as the Dictionary of Occupational Titles on the requirements of the work as generally performed in the economy. *Speruggia v. Astrue* No. 05-CV-3532, 2008 WL 818004, at *12-13 (E.D.N.Y. Mar. 26, 2008).

B. **Analysis**

The ALJ found that plaintiff could return to his past relevant work as a boat builder. At the hearing, plaintiff explained that as a boat builder he performed hands-on work, "laminat[ing] composite parts, carbon fiber." (Tr. 44). Plaintiff was not designing boats. (Tr. 44). On his daily activity report, plaintiff further explained that he "laminated boats/boat parts - read blueprints/plans, filled out materials and procedures." (Tr. 45). The ALJ noted that the DOT classifies a boat builder as semi-skilled work. (Tr. 32).

In his function report, plaintiff stated that he was "not sure" what he was able to

do before his illnesses, injuries, or conditions that he cannot do now. (Tr. 135). Additionally, plaintiff testified that he was fired because he was unaccountable, not specifically because he could not perform the work with his anxiety and depression issues.[20] (Tr. 44). Indeed, plaintiff was able to maintain his job as a boatbuilder for 12 years–from 1990-2002, even though he asserts that his anxiety and depression issues have existed since he was a child. (Tr. 143, 47).

Based on the medical evidence, plaintiff's testimony, and the job description in the DOT, the ALJ found that plaintiff did not have any significant non-exertional limitations that would preclude him from performing this past relevant work. Substantial evidence supports the ALJ's determination that plaintiff had the RFC to perform his past relevant work as a boat builder.

Plaintiff argues that "administrative law judges are required to consult with a vocational expert" if a claimant's non-exertional impairments "significantly limit the range of work permitted by his exertional limitations."[21] (Pl. Br. at 18). Plaintiff then cites primarily to the testimony of social worker Rix to support his conclusion that plaintiff's non-exertional impairments "significantly limit" plaintiff's exertional

---

[20] Likewise, plaintiff appears to have lost the carpentry job that he held for three weeks in 2006, not because of his depression or anxiety, but because he lost his license as a result of a DWI charge. (Tr. 44). Moreover, during an inpatient admission in July 2006, plaintiff "reported that alcoholism [] prevent[ed] him from maintaining his employment," not his psychiatric issues. (Tr. 292).

[21] A non-exertional limitation "significantly limits" a claimant's range of work when it causes "an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of meaningful employment opportunity." *Id.* at 411 (citation omitted). This inquiry is different than the determination at step two whether a plaintiff has a "severe impairment." "Severe impairment" is a term of art that means a claimant has anatomical, psychological, or physiological abnormalities that prevent him from performing basic work functions. 20 C.F.R. 404.1508, 404.1520(c).

limitations.  As an initial matter, as explained above, the ALJ properly assigned the opinion of social worker Rix no weight.  Additionally, step four of the analysis does not require that an ALJ consult an expert.  *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("A vocational expert or specialist *may* offer expert opinion testimony . . . about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."[22]  (emphasis added)).  The requirement of a vocational expert does not apply here where the ALJ relied on substantial evidence to support his determination that plaintiff has the residual functional capacity to perform past relevant work.  See *Pasarell v. Colvin*, No. 12 Civ. 6232, 2013 WL 4647192, at *10 (S.D.N.Y. June 26, 2013) (finding that a vocational expert was not required where the ALJ's determination was supported by substantial evidence and made the determination at step four, not step five).

Accordingly, the ALJ did not err in concluding that plaintiff was capable of performing his past relevant work.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint **DISMISSED IN ITS ENTIRETY**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file

---

[22]  The Second Circuit has held that a vocational expert must be consulted where non-exertional limitations "significantly limit the range of work permitted by [plaintiff's] exertional limitations."  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citation omitted).  However, *Zabala v. Astrue* was decided in the context of step five of the analysis.

written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 20, 2013

Andrew T. Baxter
U.S. Magistrate Judge